**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

GLENN A. HENKE AND LINDA KLUNER,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

     Plaintiffs,

v.

ARCO MIDCON, L.L.C.,

    Serve at:
    CT Corporation System
    120 South Central Avenue
    Clayton, MO 63105

MAGELLAN PIPELINE COMPANY, L.P.,

    Serve at:
    CT Corporation System
    120 South Central Avenue
    Clayton, MO 63105

and

WILTEL COMMUNICATIONS, L.L.C.,

    Serve at:
    CSC – Lawyers Incorporating Service
    Company
    221 Bolivar
    Jefferson City, MO 65101

    Defendants.

Cause No.

Jury Trial Demanded

**CLASS ACTION COMPLAINT**

COME NOW Plaintiffs, individually and on behalf of a similarly situated class, and for this

*Class Action Complaint*, by and through their attorneys, state that each of the Defendants owned,

maintained, controlled and is responsible for the use of a pipeline and pipeline easement that

exists on or beside Plaintiffs' property, and the property of the putative class, and that this

1

pipeline has, over the years, leaked substantial amounts of fuel products and other chemicals onto the land of Plaintiffs, and onto the land of members of the putative class.  Hazardous chemicals still exist and continue to migrate from the pipeline easement on the property of Plaintiffs, thereby contaminating and damaging their properties.

PARTIES

1. Plaintiffs Linda Kluner and Glenn A. Henke are individuals residing in Missouri and owning property, described below, in St. Charles County, Missouri.

2. Magellan Pipeline Company, L.P., formerly known as Williams Pipeline Company L.L.C., is a limited liability company incorporated under the laws of the State of Delaware, which has at all relevant times done business in the State of Missouri.

3. ARCO Midcon is a limited liability company formed under the laws of the State of Delaware, which has at all relevant times done business in the State of Missouri.

4. Wiltel Communications, LLC, formerly known as Williams Communications, Inc, is a limited liability company incorporated under the laws of the State of Delaware, which has at all relevant times done business in the State of Missouri.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction in that the amount in controversy exceeds $5 million and Plaintiffs and Defendants are diverse in citizenship. 28 U.S.C.A. 1332(d)(2)

6. This Court has personal jurisdiction over Defendants because they engaged in the transaction of business within the Missouri, introduced products into the stream of commerce throughout Missouri, engaged in illegal activities in Missouri (as described in

2

this Complaint), are responsible for torts committed and damages caused in Missouri, and should have reasonably anticipated being subject to the jurisdiction of Missouri courts.

7. Venue is appropriate in this Court because Plaintiffs and numerous class members reside in this District and Defendants each transacted business within this district. A substantial part of the events giving rise to this cause of action occurred in this district. 28 U.S.C.A. 1391(a).

## JURY TRIAL DEMANDED

8. For each of the Counts in this Complaint, Plaintiffs demand a jury trial regarding each of the issues to the extent it is allowed by law.

## ALLEGATIONS COMMON TO ALL COUNTS

9. Plaintiffs bring this action on behalf of themselves and all other owners of property in Missouri that are similarly situated, pursuant to Federal Rule of Civil Procedure 23. Each of the claims stated herein is being brought on behalf of a statewide class of Missouri citizens or landowners.

10. Plaintiffs seek to maintain this action as a class action both under Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

11. Plaintiffs own real property that is located at Saale Road and Route 94 in West Alton, Missouri ("Property").

12. The Plaintiffs' property has the following legal description:

> Lots 1, 2 and 3 of the partition among the heirs of Mathias Feltes, deceased, of part of Lot No. 17 of said David Nicholson's Subdivision of lands in the United States Survey 1838, in Portage des Sioux Township, St. Charles County, Missouri, and more particularly described as follows: Beginning at a rock at the Northeasterly corner of Lot No. 17 of David Nicholson's Subdivision of lands in

3

United States Survey 1838, thence running South 89 1/2 degrees West along the Northerly line of said Lot No. 17,37.09 chains to a stake, which said stake is 20 feet North, 89 ½ degrees East from a rock at the Northwest corner of said Lot No. 17 of said David Nicholson's Subdivision of lands in United States Survey 1838, thence South 9 degrees West, parallel with the West line of said lot No. 17, and 20 feet East thereof, 19.16 chains to a rock, thence South 81 ½ degrees East 36.61 chains to a rock in the Easterly line of said Lot No. 17, thence North 9 degrees East along the Easterly line of said Lot No. 17,25.13 chains, more or less, to a rock at the Northeasterly corner of said Lot No. 17 of said David Nicholson's Subdivision of lands in United States Survey 1838 and place of beginning and containing 81.10 acres, more or less. EXCEPTING, however, from the above described lands the strips of ground conveyed by Henry Feltes, Sr. and Frances Feltes, his wife, to the County of St. Charles on September 22, 1927, for road purposes as shown by right-of-way deed recorded in Book 2 page 86 for the conveyances of rights-of-way in the Recorder's Office of St. Charles County, Missouri.

13. Pleading in the alternative, at all times during Plaintiffs ownership of the Property, it has been subject to or adjacent to an easement containing an underground pipeline ("Easement").

14. At all times during Plaintiffs ownership of the Property, the property has been subject to an easement adjacent to an underground pipeline.

15. Upon information and belief, the underground pipeline running through the Easement and alongside Plaintiffs' property ("Pipeline") was used to transport petroleum products from the early 1900s until the early-1990s, though it is currently used for telecommunications cables.

16. The pipeline is approximately 8 inches in diameter and is made of cast iron. Upon information and belief, the pipeline has deteriorated significantly over time so that now, and during many decades of its use, it was unfit for transport of petroleum products.

17. The pipeline, because of its construction, and exacerbated by its aging, was inherently dangerous.

4

18. Upon information and belief, the pipeline resulted in hundreds, if not thousands, of substantial leaks.  Some of these leaks produced spills of over 55,000 gallons.  A document listing some of these numerous leaks is attached hereto as **Exhibit 10.4 was part of the Pipeline Sale & Purchase Agreement included as Exhibit 70.**

19. Hazardous chemicals were leaked onto Plaintiffs' property and due to the way such pollutants behave in the physical environment, these leaked pollutants remain on Plaintiffs' property to this day, and they continue to migrate onto Plaintiff's property from the easement.   A report showing some of the leaked and migrating hazardous chemicals from the pipeline and easement is denoted Exhibit 87 and attached herein and incorporated to this Complaint by reference.

20. All of the leakage and presence of oil products and other toxic substances was hidden from view of the plaintiffs.

21. Oil products and other toxic substances, including benzene, leaked or migrated from the Pipeline or from the Easement onto or under the Property, where they remain, thereby contaminating the Property of Plaintiffs and the respective properties of the class members.

22. Upon information and belief, Sinclair Refining Company, Sinclair Pipeline Company, Sinclair Oil Corporation and/or any predecessor, affiliate, parent company, subsidiary company or successor in interest of Sinclair Oil Corporation owned and operated the Pipeline and the Easement beginning in 1950.

23. Upon information and belief, in 1950, the Pipeline and Easement were conveyed from Sinclair Refining Company to Sinclair Pipeline Company.

24. Upon information and belief, in 1969, Sinclair Pipeline Company changed its name to ARCO Pipeline Company.

25. Upon information and belief, ARCO Midcon L.L.C., is responsible for liabilities and claims against ARCO Pipe Line Company.

26. Upon information and belief, and pleading in the alternative, ARCO Midcon now controls assets that previously owned, controlled and operated by the Sinclair entities and by Arco Pipe Line Company.

27. Upon information and belief, in 1994, ARCO Pipe Line Company sold the Pipeline and Easement to Williams Pipeline Company.

28. Upon information and belief, in 2001, Williams Pipeline Company LLC changed its name to Magellan Pipeline Company, L.P.

29. During the late 1990s, Williams Communication, Inc., a subsidiary or affiliate of Williams Pipeline Company, acquired and operated the easement and then-pipeline for fiber optic cables.

30. Upon information and belief, Wiltel Communications, LLC is the current owner of the Pipeline and the Easement.

31. Upon information and belief, Wiltel Communications, LLC was formerly known as "Williams Communications, Inc."

32. Upon information and belief, and pleading in the alternative, Wiltel Communications, LLC is responsible for liabilities and claims in all regards set forth in this Complaint against Williams Communications, Inc.

6

33. Upon information and belief, and pleading in the alternative, Wiltel currently controls assets relevant to the claims set forth in this Complaint that were previously owned, controlled and operated by Williams Communications, Inc.

34. Defendants Magellan, Wiltel and ARCO Midcon (on behalf of themselves and by their predecessors for which they are liable) owed Plaintiffs the duty to stop pollution leaks or migrations from the Pipeline or from the Easement onto or into the Property, to inspect and search for leaks and contaminants (past and present) from the Pipeline, to clean up these leaks and contaminants, to utilize modern methods such as intelligent pigs to find past repairs on the Pipeline which would identify past leaks, to keep and retain records of leaks, to repair leaks, and clean up contaminants, pollutants, and poisons, which originated in the Pipeline or the Easement, and to warn Plaintiffs of nearby pollutants or hazardous leaks or contaminations which originated from the Pipeline or Easement, and which persist and continue migrating.

35. Defendants owe an ongoing duty to clean up any spills or leaks, and the remnants of the spills and leaks.

36. Defendants owed and owe Plaintiffs an ongoing duty to check for such spills and leaks.

37. For the health of the Plaintiffs and in order for the property to maintain its use and value, it is necessary for Defendants to clean up the spills and leaks.

38. None of the Defendants has engaged in a reasonable clean-up of any of the spills and leaks.

39. Defendants continue to breach their ongoing duty to clean up any spills and leaks on the property.

40. Defendants continue to breach their ongoing duty to clean up any spills and leaks on the property.

41. The above-described leakage, spillage and migration constitute hidden dangers known by Defendants but not known or appreciated by the land-owners.

42. In 1994, Williams Pipeline Company purchased the petroleum pipeline and easement from ARCO Pipe Line Company.

43. Before the pipeline sale, employees of Williams Pipeline Company and ARCO Pipe Line Company reviewed the past leak records for the pipeline.

44. A true and accurate copy of the "Pipeline Sale and Purchase Agreement" is denoted "**Exhibit 70**" and attached to this complaint.

45. Williams Pipe Line Company and ARCO Pipeline Company compiled a list of hundreds of past leaks in Missouri, from the pipeline, and attached the list to the Pipeline Sale and Purchase Agreement as **Exhibit 10.4 to Exhibit 70.**

46. In ¶5.9(b & c) of Exhibit 70, Williams Pipe Line Company and ARCO Pipeline Company agreed that Williams Pipe Line Company would not and could not test the soil or water for past leaks before closing of the transaction.

47. ARCO Pipeline Company had leaks records which were used to prepare the attachment to the Pipeline Sale And Purchase Agreement but ARCO Pipeline Company had no records showing or evidencing that any of the listed leaks had been remediated or cleaned up.

48. Williams Pipe Line Company acquired the records for the pipeline from ARCO Pipeline Company and Williams Pipe Line Company had no records that any of the listed leaks had been remediated or cleaned up.

8

49. When Wiltel acquired the pipeline, Wiltel acquired the records for the pipeline from ARCO Pipeline Company and from Williams Pipe Line Company and Wiltel had no records that any of the listed leaks had been remediated or cleaned up.

50. ARCO, Magellan, and Wiltel had additional leak records contained in the tract files for the pipeline which showed additional leaks, not listed in Exhibit 10.4 of the Pipeline Sale and Purchase Agreement.

51. ARCO, Magellan, and Wiltel had no record that many of these additional leaks had ever been remediated or cleaned up.

52. If a leak is remediated or cleaned up a record of such remediation or clean up is normally made.

53. Therefore, the lack of such a remediation or clean up record demonstrates and constitutes evidence that no remediation or clean up had occurred.

54. Each of the Defendants actually knew and should have known of the hundreds of un-remediated leaks in Missouri from their pipeline and easement and the continuing harm and migration from the recorded leaks.

55. The standard of care in the pipeline industry is that once a past leak is known, if no record of a clean up exists or can be found, then the past leak should be investigated and cleaned up.

56. Defendants have not investigated nor cleaned up any of the past leaks shown in the attachment to the Pipeline Sale and Purchase Agreement (Exhibit 70).

57. Defendants have not investigated nor cleaned up many of the additional past leaks shown in the pipeline tract files.

58. Defendants have not informed landowners, government bodies, or environmental stewards of the hundreds of past non-remediated leaks from the pipeline as shown by defendants own records.

59. As a result of their actions and omissions, each of these Defendants has directly and proximately caused damages and injures to Plaintiffs, as described in the above paragraphs, by improperly operating or maintaining the Pipeline and Easement, which led to the contamination of Plaintiffs' Property.

60. In the fall of 2002, the Missouri Department of Natural Resources ("MDNR") advised residents at an adjacent property to Plaintiffs that their drinking water well and portions of their land were heavily contaminated with several dangerous petroleum compounds, including benzene.

61. Soil sampling conducted by MDNR identified a leak in the same Pipeline to be the source of the contamination found on that adjacent Property.

62. In addition, readings from a test well on Plaintiffs' property show benzene concentration levels that are wildly higher than the acceptable standards as set by the Environmental Protection Agency.   See e.g **Exhibit 87, test well GP-5** .

63. Long-term exposure to benzene is known to affect and injure the blood and bone marrow of humans.  Benzene enters the blood stream by way of the lungs when inhaled and by way of the intestinal tract when ingested.  Benzene is then transported to and stored in the liver and bone marrow.

64. In addition to causing headaches, nausea, heart irregularities, decreased immunity, irregular menstrual periods and other general complaints, benzene exposure can cause blood irregularities and diseases, including aplastic anemia.

65. As a direct and proximate result of petroleum products leaking and migrating from the Pipeline and the Easement, the soil and groundwater on the Property are in need of extensive remediation activities to render them to be in compliance with state and federal law.  This has dramatically reduced the value of the Property.  Even if the petroleum contamination on the Property were fully remediated in compliance with State and Federal law, the Property's value is significantly less than before the leak occurred, due to the stigma of contamination of residential land and drinking water, and because of residual and remaining contamination that necessarily will remain after cleanup.

## CLASS ALLEGATIONS

66. The two classes are defined and described as follows:

   a. Regarding Counts I, II, III, IV or V:

   **All persons who currently own property on which there is a record indicating that there is a leak or spill of petroleum products or other pollutants or chemicals from the "Pipeline."**

   b. Regarding Count VI:

   **All persons who contracted with or whose predecessors in land ownership contracted with Williams Communications (n/k/a Wiltel) by signing a copy of the "Right of Way and Easement Agreement" attached to this Complaint as Exhibit 2000, who currently own property on which there is a record indicating that there is a leak or spill of petroleum products or other pollutants or chemicals from the "Pipeline."**

   Excluded from the proposed classes are Defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees.  Also excluded are the immediate family members of the above persons.  Also excluded is any trial judge who may preside over this case.

67. The requirements for maintaining this action as a class action are satisfied, as set forth immediately below:

11

68. The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable. While the exact number of absent class members is unknown to Plaintiffs at this time, it is ascertainable by appropriate discovery and Plaintiffs, upon information and belief, alleges that the proposed class may include hundreds of members. The requirement of numerosity is therefore satisfied.

69. Common questions of law or fact exist as to all proposed class members and predominate over any questions which affect only individual members of the proposed class. These common questions of law or fact include:

    a. Whether Plaintiff and Class are entitled to a permanent injunction requiring Defendants to test their land for pollution and to engage in all necessary behavior to remediate the pollution;

    b. Whether Defendants' are liable for ongoing trespass onto the land of Plaintiffs and Class;

    c. Whether Defendants are in breach of their ongoing duty to clean up all spills and leaks;

    d. The history of the Pipeline and the maintenance done to the Pipeline (or lack thereof) by the Defendants.

    e. The types of records maintained by the Defendants regarding the nature of the substances transported through the Pipeline;

    f. Whether Plaintiffs and Class are entitled to damages;

12

    g.   The types of damages that can be caused to real estate by the leakage, spillage and migration of petroleum products and/or other chemicals emanated from the Pipeline and its easement.

    h.   Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages;

70. The claims of the Plaintiffs are typical of the claims of the class.  Plaintiffs and all class members own land that was contaminated by spillage or leakage of petroleum products from the pipeline described herein.

71. Plaintiffs will fairly and adequately represent the interests of the members of the class. Plaintiffs have no interest adverse to the interests of the members of the class. Plaintiffs have retained competent attorneys who have experience in class action litigation.

72. A class action is a superior method for the fair and efficient adjudication of this controversy. The adjudication of a separate action by individual members of the class would create a risk of a) inconsistent or varying adjudications with respect to individual members of the class; or b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Upon information and believe each of the class members suffered the same sort of damages and injuries as those suffered by the Plaintiffs, due to leakage and/or spillage of petroleum products or other chemicals from the same pipeline.  In addition, this class action will allow for the resolution of identical claims in an efficient manner that avoids fragmented litigation in which inconsistent results could occur.

73. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  There is no special interest in the members of the class individually controlling the prosecution of separate action.  The expense and burden of individual litigation make it impossible for the class members individually to address the wrongs done to them.

74. There will be no difficulty in managing this lawsuit as a class action.  Evidence relating to Defendant's alleged violations will be applicable to all members of the class; there are accepted means for notifying class members who have suffered injuries and damages described herein.

75. A class action is also required because, while Defendants possess the records indicating the location and current owners of contaminated property, the current owners do not know that their property is contaminated.

76. Each of the previous allegations is hereby incorporated by reference into each of the following Counts of this Complaint.

77. Each of the allegations found in each of the following Counts is hereby incorporated by reference into each of the other Counts of this Complaint.


## COUNT I
### Nuisance Against All Defendants

78. Plaintiffs incorporate paragraphs 1-77 as if fully set forth herein.

79. Defendants' use of the Easement and the Pipeline is and was unreasonable, unusual and unnatural.

80. The Defendants' use of the Easement and Pipeline has unreasonably interfered with Plaintiffs' and class members' use and enjoyment of their respective properties by

14

releasing petroleum hydrocarbons and other chemicals onto the properties and allowing the migration of these hazardous substances.

81. The actions of the Defendants continue to interfere with the use, by Plaintiffs and class members, of their respective properties.

82. Defendants' use of the Easement and the Pipeline resulted, and continues to result in a substantial and continuing leakage and migration of petroleum products and other chemicals from the Easement and the Pipeline onto the Property of the Plaintiffs and the properties of class members, damaging and contaminating the soil, reducing the value of the properties potentially injuring the health of Plaintiffs and class members, and limiting the appropriate use of the contaminated property.

83. Defendants' use of the Easement and the Pipeline resulted in extensive and continuing injuries and damages to the Properties of Plaintiffs and class members.

84. Defendants' use of the Easement and the Pipeline is so unreasonable, unusual and unnatural that it is substantially impairing the rights of Plaintiffs and class members to enjoy their respective properties.

85. The spillage, leakage and migration of the aforementioned pollutants and hazardous chemicals has contaminated the property of Plaintiffs' and class members.

86. As a direct and proximate result of Defendants' unreasonable use and condition of the Easement and the Pipeline, Plaintiffs and class members have suffered potential injuries and damages to their health and properties; the values of their respective properties have diminished; and Plaintiffs and class members face extensive clean-up costs.

87. Plaintiffs and class members are entitled to punitive damages for such actions and omissions because Defendants' actions and inactions were outrageous, the product of

15

reckless indifference to the rights of others, and amounted to complete indifference and conscious disregard for the health and safety of others.

WHEREFORE, Plaintiffs and Class members pray that this Court grant the relief stated in the Prayer pertaining to all Counts of this Complaint (located at the end of this Complaint), which is hereby incorporated by reference into this Count.

## COUNT II – TRESPASS
### Against All Defendants

88. Plaintiffs incorporate paragraphs 1-87 as if fully set forth herein.

89. As the owners of the Property, Plaintiffs have a valid right to possession and enjoyment of the Property.

90. The conduct of the Defendants has resulted in a continuing entry, trespass, and migration of petroleum products and chemicals onto the properties of Plaintiffs and class members, without their permission;

91. This entry, trespass and intrusion have interfered with the use and enjoyment of their respective properties by Plaintiffs and class members.

92. The actions of each of the Defendants were outrageous due to Defendant' conscious and reckless disregard and indifference to the rights of Plaintiffs, entitling Plaintiffs and class members to punitive damages.

93. By causing and/or allowing petroleum products to leak from the Pipeline and the Easement and continue to migrate from the Easement, each of the Defendants violated the right to possession and enjoyment of the Property of Plaintiffs and class members.

94. By causing and/or allowing petroleum products to leak from the Pipeline and the Easement and continue to migrate from the Easement, each of the Defendants exceeded the scope of the Easement.

95. As a direct and proximate result of the trespasses set forth in the preceding paragraphs, the value of the Property of the Plaintiffs and the properties of the class members have dropped substantially.

96. The spillage and leakage has contaminated the property, home, water of Plaintiffs and class members with the aforementioned pollutants and hazardous chemicals, has threatened the health of the Plaintiffs and has necessitated an expensive pollution clean up of the properties of Plaintiffs and class members.

97. As a direct and proximate result of Defendants' unreasonable use of the Easement and the Pipeline, Plaintiffs and class members have suffered potential injuries and damages to their health and the Property, and the value of their respective properties have diminished.

98. The actions of each of the Defendants have damaged Plaintiffs and class members in an amount that has yet to be determined.

99. Plaintiffs are entitled to punitive damages for the actions and inactions of each of the Defendants, as such action were outrageous, were the product of reckless indifference to the rights of others, and amounted to complete indifference and conscious disregard for the health and safety of others.

WHEREFORE, Plaintiffs and Class members pray that this Court grant the relief stated in the Prayer pertaining to all Counts of this Complaint (located at the end of this Complaint), which is hereby incorporated by reference into this Count.

## COUNT III – NEGLIGENCE
### Against All Defendants

100.     Plaintiffs incorporate paragraphs 1-99 as if fully set forth herein.

101.     Defendants owed a duty to Plaintiffs and Class to control and contain the petroleum and other chemicals that passed through the Pipeline and to stop migration of hazardous chemicals from the easement onto Plaintiffs' property.

102.     Defendants owe an ongoing duty to Plaintiffs and Class to clean up and any all spills or leaks from the Pipeline.

103.     Defendants negligently, carelessly and recklessly transported petroleum and other chemicals through the Pipeline.

104.     Defendants negligently, carelessly and recklessly are taking no action to clean up the spills and leaks from the Pipeline and the migrating contamination of the easement despite an ongoing duty to do so and the ongoing damage the leaks and spills are causing.

105.     As a direct and proximate result of Defendants' negligence, Plaintiffs have been, and continue to be damaged, as more specifically set out in this Complaint.

106.     The actions of Defendants were outrageous due to Defendants' conscious and reckless disregard to the rights of Plaintiffs and Class, entitling Plaintiffs and Class to an award of punitive damages

WHEREFORE, Plaintiffs and Class members pray that this Court grant the relief stated in the Prayer pertaining to all Counts of this Complaint (located at the end of this Complaint), which is hereby incorporated by reference into this Count.

## COUNT IV – ABNORMALLY DANGEROUS ACTIVITY – STRICT LIABILITY
### Against All Defendants

107.     Plaintiffs incorporate paragraphs 1-106 as if fully set forth herein.

108.     Defendants used, or are liable for the maintenance and use, of a poorly constructed pipeline made from wholly inappropriate materials.

109.     Alternatively, owning or maintaining a petroleum pipeline or easement constitutes an abnormally dangerous activity.

110.     The Pipeline is constructed of a material that corrodes and rusts due to exposure to the elements, including water.

111.     Storing and transporting pollutants, including petroleum and other chemicals, in a pipeline guaranteed to leak is always dangerous and is guaranteed to cause damage to others.

112.     Storing and transporting pollutants, including petroleum and other chemicals, in a pipeline known to leak and spill is always dangerous and is guaranteed to cause damage to others.

113.     Maintaining or being responsible for a pipeline or easement, but refusing to clean up spills and leaks, is always dangerous and is guaranteed to cause damage to others.

114.     Further, even when exercising a great deal of care, the transport of pollutants, including petroleum and other chemicals, presents a high risk of leaking and spilling and is therefore dangerous and likely to cause damage to others.

115.    The Pipeline carried chemicals that, when leaking or spilling, could explode, pollute soil, air, or water, or cause gas build up in homes that could result in poisoning or explosions.

116.    Further, the leaks and spills remain today and cause pollution to land and water. They can cause poisonous benzene gas to flow into homes and can result in explosion.

117.    Further, the mere operation of a pipeline, due to the unpredictability of damage to the pipeline due to natural and unnatural causes means that even when care is used, there is a high risk of danger and damage to others.

118.    Upon information and belief, pipelines throughout the United States have resulted in pollution to land, soil, air and people and have resulted in injuries and death.

119.    Pipeline leaks are likely to go undetected by landowners for long periods of time, while they expose landowners and others to severe and life-threatening health risks.

120.    Pipeline leaks are expensive to clean-up, last unusually long periods of time if not cleaned-up, and create an ongoing health risk to owners of the land, and often, the public at large.

121.    Possessing, using or maintaining pipelines constitute abnormally dangerous activities.

122.    Defendants, regardless of whether they were negligent or not, are strictly liable for the damages and dangers created the Pipeline.

123.    As a direct and proximate result of the operation of the Pipeline, Plaintiffs have been, and continue to be damaged, as more specifically set out in this Complaint.

WHEREFORE, Plaintiffs and Class members pray that this Court grant the relief stated in the Prayer pertaining to all Counts of this Complaint (located at the end of this Complaint), which is hereby incorporated by reference into this Count.

## COUNT V – DECLARATORY AND INJUNCTIVE RELIEF
Against All Defendants

124.      Plaintiffs incorporate paragraphs 1-123 as if fully set forth herein.

125.      Class certification of the claims is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

## COUNT VI – Breach of Contract

126.      Plaintiffs incorporate paragraphs 1-125 as if fully set forth herein.

127.      During or about 1999, Defendant Wiltel entered contracts with numerous people who owned land along the Pipeline, whose land has been damaged by leakage of petroleum products or other toxic substances from the Pipeline.

128.      **Exhibit 2000** is a copy of one of those contracts, all of which were identical regarding their terms.

129.      Plaintiffs executed **Exhibit 2000** with Wiltel's predecessor.

130.      In those contracts, Wiltel, the Grantee, was made responsible for remediating all hazardous materials and conditions on the land of the various landowners, as follows:

21

**Any and all hazardous materials or conditions encountered during the installation operation, or maintenance of the underground communication system shall be fully remedied promptly by Grantee.**

131.     Such hazardous materials and conditions exist, and Wiltel had actual knowledge of the hazardous materials and had encountered same, as indicated in previous allegations of the Complaint, yet Wiltel has failed to remedy the situation, as it was obligated to do by this contract.

132.     Plaintiffs have been, and continue to be damaged, as more specifically set out in this Complaint, and by incurring legal fees in prosecuting this action.

## PRAYER FOR RELIEF – ALL COUNTS

Plaintiffs and Class request that the Court enter judgment in their favor and against Defendant as follows:

a.   Ordering that this action be maintained as a class action pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and pursuant to this Court's powers under Federal Rule of Civil Procedure 23(c), and defining the classes as:

   i.   Regarding Counts I, II, III, IV or V:

   **All persons who currently own property on which there is a record indicating that there is a leak or spill of petroleum products or other pollutants or chemicals from the "Pipeline."**

   ii.   Regarding Count VI:

   **All persons who contracted with or whose predecessors in land ownership contracted with Williams Communications (n/k/a Wiltel) by signing a copy of the "Right of Way and Easement Agreement" attached to this Complaint as Exhibit 2000, who currently own property on which there is a record indicating that there is a leak or spill of petroleum products or other pollutants or chemicals from the "Pipeline."**

> Excluded from the proposed classes are Defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees.  Also excluded are the immediate family members of the above persons.  Also excluded is any trial judge who may preside over this case.

b.  Certifying Plaintiffs as class representatives and appointing Plaintiffs' counsel as counsel for the Classes;

c.  Awarding Plaintiffs and class members compensatory, consequential and incidental damages for their ascertainable losses, against all Defendants jointly and severally, including but not limited to damages:

   i.  to real property, including loss in real property value, the cost of restoration and clean-up of the real property,

   ii.  for annoyance and discomfort, the past,

   iii.  for present and/or future loss of use and enjoyment of real property,

   iv.  for annoyance and discomfort,

   v.  for consultant costs and other costs incurred as a result of the contamination and migration of the substances;

   vi.  for loss of property value after restoration and clean-up,

   vii.  for decreased value of the property before and after restoration, clean-up, and monitoring of the properties and those who possess or use the properties;

   viii.  for loss of property value appreciation,

   ix.  for loss of business opportunity,

   x.  for loss of rental value of the property;

   xi.  for decreased marketability of the property; and

xii.   for other economic and non-economic losses, the exact nature and extent of

which is yet to be determined;

d.   Entering a preliminary and permanent injunction requiring each of the Defendants to

take all steps necessary to completely clean up the properties of the class members,

ridding those properties of all petroleum and chemical residue originating from the

pipeline and easement.

e.   Awarding Plaintiffs and Classes pre-judgment and post-judgment interest as provided

by law;

f.   Awarding Plaintiffs and Classes punitive damages as provided by law;

g.   Awarding Plaintiffs and Class attorneys' fees and costs incurred in prosecuting this

action, as provided by the relevant contracts and by law;

h.   Plaintiffs pray that any final judgment be against the Defendants jointly and severally.

i.   Providing for medical monitoring for each of the Plaintiffs and Class Members.

j.   Entering a Preliminary and Permanent Injunction enjoining Defendants from

engaging in the unlawful activities described herein, specifically including the future

use of the Pipeline for transporting any sort of petroleum product or chemical capable

of further damaging the properties of the Plaintiffs and class members;

k.   Entering an Order that Defendants are obliged to maintain possession of and carefully

preserve any "**documents**" "that relate to any of the allegations in this Class Action

Complaint.  During this litigation Plaintiff will seek documents pertaining to the

allegations in the Complaint through discovery.  This could include documents that

are older than those Defendants are required to preserve under existing legal duties

not related to this litigation. Access to the documents described above is necessary

24

both in order to pursue class certification and in order to pursue the substantive allegations of this matter.  The word "**document**" is used in the broad and liberal sense and means written, typed, printed, recorded or graphic matter, however stored, produced or reproduced, of any kind and description and whether an original, master, duplicate or copy, including, but not limited to, papers, notes, accounts, books, advertisements, letters, memoranda, notes of conversations, contracts, agreements, drawings, telegrams, electronic mail, tape recordings, communications, including inter-office and intra-office memoranda, reports, studies, leak reports, land-owner settlement documents or receipts, tract files, maps, working papers, corporate records, minutes of meetings, notebooks, bank deposit slips, bank checks, cancelled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, meetings or conferences or things similar to any of the foregoing, and to include any data, information or statistics contained within any data storage modules, tapes, discs, diskettes, or other memory device, or other information retrievable from any storage systems, including, but not limited to, computer-generated reports and printouts. The word "**document**" also includes data compilations from which information can be obtained and translated, if necessary, by the respondent through detection devices in a reasonably usable form. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modified copy or un-identical copy is a separate "**document**."

l. Awarding Plaintiffs and Classes such other and further relief as may be just and proper.

m.  This Prayer is hereby incorporated by reference into all Counts of this Complaint.


**SIMON LAW, P.C.**


By: __ /s/  John G Simon
       John G. Simon, # 4371
       Erich Vieth, #4608
       John Campbell, #543242
       701 Market Street, Suite 1450
       St. Louis, MO 63101
       314-241-2929
       Fax: 314-241-2029
Email: evieth@simonlawpc.com
        jcampbell@simonpassanante.com


**SCHULTZ & ASSOCIATES LLP**
       Robert Schultz, #35329
       640 Cepi Drive, Suite A
       St. Louis, Missouri 63005
       636-537-4645
       636-537-2599 (facsimile)
       rschultz@sl-lawyers.com

*Attorneys for Plaintiffs*