UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GLENN A. HENKE and LINDA KLUNER,)
INDIVIDUALLY and on behalf of all  )
others similarly situated                        )
                                                           )
                    Plaintiffs,                      )
                                                           )
v.                                                        )          Case No. 4:10CV86 HEA
                                                           )
ARCO MIDCON, L.L.C., MAGELLAN  )
PIPELINE COMPANY, L.P., and WILTEL )
COMMUNICATIONS, L.L.C.                )
                                                           )
                    Defendants.                    )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Wilted Communications,

L.L.C.'s Motion to Dismiss, [Doc. No. 4]; Defendant Magellan Pipeline Company,

L.P.'s Motion to Dismiss, [Doc. No. 15]; Plaintiffs' Motion for Leave to file an

Amended Complaint, [Doc. No. 19]; and Defendant ARCO Midcon, L.L.C's

Motion to Dismiss and Strike, [Doc. No. 28].  For the reasons set forth below,

Wiltel and Magellan's Motions to Dismiss are granted in part and denied in part.

ARCO Midcon's motion to dismiss and to strike is granted.

## Facts and Background

Plaintiffs bring this putative class action seeking recovery for alleged damage

to Plaintiffs' property and the property of the putative class incurred allegedly as a result of Defendants' ownership, maintenance and control of a pipeline and pipeline easement on or beside the properties. Plaintiffs' Complaint alleges the following[1]:

Plaintiffs own real property that is located at Saale Road and Route 94 in West Alton, Missouri. At all times during Plaintiffs' ownership of the property, it has been subject to or adjacent to an easement containing an underground pipeline.

The underground pipeline running through the easement and alongside Plaintiffs' property was used to transport petroleum products from the early 1900s until the early-1990s. The pipeline is currently used for telecommunications.

The pipeline is approximately 8 inches in diameter and is made of cast iron. Allegedly, the pipeline has deteriorated significantly over time so that now, and during many decades of its use, it was unfit for transport of petroleum products. The pipeline resulted in substantial leaks. The Complaint further alleges that hazardous chemicals were leaked onto Plaintiffs' property and have remained on the property to this day. According to the Complaint, the chemicals continue to migrate onto Plaintiffs' property from the easement. All of the leakage and presence of oil

---

[1] This recitation of facts is set forth for the purposes of these Motion and in no way relieves the parties of the proof thereof in later proceedings. Several of Plaintiffs' allegations are made on "information and belief." For the purposes of this Opinion, the Court will omit the use of this terminology.

products and other toxic substances was hidden from view of the Plaintiffs.

Oil products and other toxic substances, including benzene, leaked or migrated form the pipeline or from the easement onto or under the property, where they remain thereby contaminating the property of the Plaintiffs and the respective properties of the putative class members.

Sinclair Refining Company, Sinclair Pipeline Company, Sinclair Oil Corporation and/or any predecessor, affiliate, parent company, subsidiary company or successor in interest of Sinclair Oil Corporation owned and operated the pipeline and easement beginning in 1950. In 1950, the pipeline and easement were conveyed from Sinclair Refining Company to Sinclair Pipeline Company, which, in 1969 changed its name to ARCO Pipeline Company.

ARCO Midcom L.L.C., is responsible for liabilities and claims against ARCO Pipeline Company. ARCO Midcom now controls assets that were previously owned, controlled and operated by the Sinclair entities and ARCO Pipeline Company.

In 1994, ARCO Pipeline Company sold the pipeline and easement to Williams Pipeline Company. In 2001, Williams Pipeline Company changed its name to Magellan Pipeline Company, L.P.

During the late 1990s, Williams Communication, Inc., a subsidiary of

Williams Pipeline Company, acquired and operated the easement and then-pipeline for fiber optic cables.

Wiltel Communications, LLC is the current owner of the pipeline and easement. Wiltel was formerly known as Williams Communications, Inc. Allegedly, Wiltel Communications, LLC. is responsible for liabilities and claims against Williams Communications, Inc. Wiltel currently controls assets relevant to the claims set forth in the Complaint that were previously owned, controlled and operated by Williams Communications, Inc.

Plaintiffs allege that Defendants Magellan, Wiltel and ARCO Midcon (on behalf of themselves and by their predecessors for which they are liable) owed Plaintiffs the duty to stop pollution leaks or migrations from the pipeline, or from the easement onto or into the property, to inspect and search for leaks and contaminants (past and present) from the pipeline, to clean up the leaks and contaminants, to utilize modern methods such as intelligent pigs to find past repairs on the pipeline which would identify past leaks, to keep and retain records of leaks, to repair leaks, and clean up contaminants, pollutants, and poisons, which originated in the pipeline or the easement, and to warn Plaintiffs of nearby pollutants or hazardous leaks or contaminations which originated from the pipeline or easement, and which Plaintiffs contend persist and continue migrating.

Plaintiffs further allege that Defendants owe an ongoing duty to clean up any spill or leaks, and the remnants of the spills and leaks and that Defendants owed and owe Plaintiffs an ongoing duty to check for spills and leaks.

The Complaint alleges that none of the Defendants has engaged in a reasonable clean-up of any of the spills and leaks and that Defendants continue to breach their ongoing duty to clean up the spills and leaks on the property.

Plaintiffs allege that the leakage, spillage and migration constitute hidden dangers known by Defendants but not known or appreciated by the landowners.

Prior to the sale of the pipeline and easement to Williams Pipeline Company in 1994, employees of Williams and ARCO reviewed past leak records for the pipeline. They compiled a list of hundreds of past leaks in Missouri. The list was attached to the Pipeline Sale and Purchase Agreement. Williams and ARCO agreed that Williams would not and could not test the soil or water for past leaks before the closing of the transaction. There were no records showing or evidencing that any of the listed leaks had been remediated or cleaned up.

Although there are records of additional leaks not contained in the exhibit to the Pipeline Sale and Purchase Agreement, there are no records of any clean ups of these leaks.

Plaintiffs allege that as a result of the actions and omissions of Defendants,

they have proximately caused damages and injuries to Plaintiffs by improperly operating or maintaining the pipeline and easement, which led to the contamination of Plaintiffs' property.

Plaintiffs allege that the Missouri Department of Natural Resources, (MDNR), advised residents of an adjacent property to Plaintiffs that their drinking water well and portions of their land were heavily contaminated with several dangerous petroleum compounds, including benzene. Soil sampling conducted by the MDNR identified a leak in the pipeline to be the source of the contamination. Additionally, readings from a test well on Plaintiffs' property show benzene concentration levels that are higher than the acceptable standards as set by the Environmental Agency.

Count I of Plaintiffs' Complaint is brought under a theory of nuisance against all Defendants; Count II is brought against all Defendants for trespass; Count III, against all Defendants is brought for Defendants' alleged negligence; Count IV alleges Defendants engaged in an abnormally dangerous activity; Count V is styled "Declaratory and Injunctive Relief," but contains no additional allegations other than incorporating the previous allegations and stating that Class certification of the claims is proper. Count VI is brought against Wiltel for breach of contract.

Plaintiffs seek compensatory, consequential and incidental damages,

injunctive relief and punitive damages.[2]

Defendants Wiltel and Magellan move to dismiss the Complaint in its entirety. Defendant ARCO moves to dismiss Counts IV, V and VI and to strike certain other allegations of Plaintiffs' Complaint.

## Discussion

When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) and then *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated by *Twombly*, supra); see also *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009). While detailed factual allegations are not necessary, a complaint

---

[2] Plaintiffs' Complaint seeks medical monitoring for Plaintiffs, however, they have agreed to no longer seek medical monitoring.

that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. *Twombly*, 550 U.S. at 555; accord *Iqbal*, 129 S.Ct. at 1949. The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1949; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If the claims are only conceivable, not plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1950. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See *Nusku v. Williams*, 490 U.S. 319, 327 (1989).

## Count I-Nuisance

Defendants Wiltel and Magellan have filed virtually identical motions to dismiss Count I. The Court, therefore, will address the motions together.

"Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his [or her] property. The focus is defendant's unreasonable interference with the use of and enjoyment of [another's] land." *Byrom v. Little Blue Valley Sewer Dist.,* 16 S.W.3d 573, 576 (Mo. banc 2000); *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 880 (Mo.banc 1985).

> Essential elements that are required for recovery on the basis of nuisance are injury, damage, and causation. *See Fuchs v. Curran Carbonizing & Engineering Co.,* 279 S.W.2d 211, 217 (Mo.App.1955). The causation element of a nuisance claim is proven when it is shown that the use of the offending property was done in a manner that caused injury to the property of the one claiming damages. *Fletcher v. City of Independence,* 708 S.W.2d 158, 177 (Mo.App.1986).

*Basham v. City of Cuba,* 257 S.W.3d 650, 653 (Mo.App. 2008).

Defendants Wiltel and Magellan argue that the Complaint fails to state a cause of action for nuisance because the facts alleged negate the causation element of a nuisance claim. Neither Defendant owned the property at the time the pipeline was operated for the transportation of petroleum products and therefore, the spill and leaks could not have been caused by either of these two defendants.

Plaintiffs respond by arguing that their claims are not limited to the spills and leaks, but are also based on the continued migration and spreading of the oil

products onto their property. Plaintiffs rely on *Cook v. DeSoto Fuels, Inc.*, 169 S.W.3d 94, 104-05 (Mo.App. 2005).[3] This reliance, however, fails to recognize that in *Cook*, the defendant was the party responsible for originally *causing* the contamination of the property, and thus, the continuing contamination.

Nowhere in the Complaint do Plaintiffs allege any acts taken by Wiltel and/or Magellan which caused alleged damage, *i.e*, the leaks and spills of the contaminants and the continued migration thereof. The allegations of the Complaint establish that at no time during these Defendants' alleged ownership of the pipeline were any petroleum products transported. "It is essential to liability in either a public or private nuisance case that the defendant's acts have set in motion a force or chain of events resulting in the invasion. RESTATEMENT (SECOND) OF TORTS. . . Section 824, cmt. b." *City of St. Louis v. Varahi, Inc.,* 39 S.W.3d 531, 537 (Mo.App. E.D.,2001). As such, Plaintiffs fail to state a claim for nuisance against these Defendants. Count I as to Defendants Wiltel and Magellan will be dismissed.

**Count II-Trespass**

Defendants Wiltel and Magellan's motions to dismiss Count II are again

---

[3] Plaintiffs also rely on *Scarlett & Assoc. V. Briar cliff Ctr. Partners*, 2009 WL 3151089 (N.D. Ga. 2009). The conclusions reached in *Scarlett*, however, are based on Federal and Georgia state law, and are therefore inapplicable to the Court's analysis of the issues under Missouri law.

essentially identical.  The Court will again address the motions together.  The parties agree that trespass involves interference with the plaintiffs' possessory rights and requires an intentional act that results in a physical invasion of plaintiffs' property.  *Cook*, 169 S.W.3d at 102.  Defendants again argue that Plaintiffs have failed to state a cause of action since the allegations of the Complaint establish that no petroleum products were transported in the pipeline during their ownership, therefore, these Defendants could not have taken any intentional acts to cause Plaintiffs' alleged injuries.

> A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor's predecessor in legal interest therein has tortiously placed there, if the actor, having acquired his legal interest in the thing with knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing.

RESTATEMENT (SECOND) TORTS  § 161.

Plaintiffs have alleged that these defendants had knowledge of the spills and leaks and the continued migration of the contaminants and have failed to take any action to remove them from Plaintiffs' property.  Under the Restatement, Plaintiffs have, for the purposes of the motions to dismiss, plausibly alleged a cause of action against Defendants Wiltel and Magellan for trespass.

**Count III-Negligence**

The parties agree as to the elements necessary to establish a negligence claim.

Plaintiffs must establish that Defendants had a duty to protect Plaintiffs from injury, that Defendants failed to perform that duty and that Defendants' failure proximately cause injury to Plaintiffs. *Lopez v. Three Rivers Electric Coop., Inc*, 26 S.W.3d 151, 155 (Mo. banc 2000).

While Defendants again argue that they could not possibly have caused the injury to Plaintiffs since the spills and leaks occurred prior to their ownership of the pipeline, Plaintiffs have alleged these Defendants had a duty to stop migration of hazardous chemicals from the easement, and the failure to do so caused injury to Plaintiffs. Plaintiffs further allege these Defendants knew of the spills and leaks at the time they acquired the pipeline. Taken together, Plaintiffs' allegations sufficiently set forth a claim such that Plaintiffs' should be allowed to present evidence which would establish the existence of the duty owed by these Defendants and that Defendants' breach of that duty was the proximate cause of Plaintiffs' alleged injuries.

**Count IV-Abnormally Dangerous Activity-Strict Liability**

Plaintiffs concede that Count IV should be dismissed as to Wiltel and Magellan.

With respect to Defendant ARCO Midcon, the Complaint fails to state a

claim.  The doctrine of strict liability applies in narrow circumstances.  "[A] person is strictly liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings."  *Clay v. Missouri Highway and Transp. Com'n*, 951 S.W.2d 617, 623 (Mo.App. 1997)(citations omitted).

In *Fletcher v. Conoco Pipe Line Co*, 129 F.Supp.2d 1255, (W.D. Mo. 2001), the Court determined that the operation of a petroleum pipeline does not constitute abnormally dangerous activity.  The *Fletcher* Court noted that Missouri courts appear to have adopted the Restatement's definition of strict liability, *i.e.*, that the Missouri courts assess a list of factors to determine whether an activity is abnormally dangerous.  *Id*, at 1260.  Those factors to consider are:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

> Restatement (Second) of Torts § 520. Courts should consider these factors "as a whole and the weight apportioned to each should be dependent upon the facts in each particular case." Restatement (Second) of Torts § 520.

*Id.* Applying these Restatement factors, the *Fletcher* Court determined that operation of a petroleum pipeline is not, as a matter of law, an abnormally dangerous activity. *Id.*, at 1261.

Plaintiffs argue that this case involves a question of general versus specific, therefore seeking to avoid *Fletcher*. As ARCO Midcon correctly argues, Plaintiffs' argument goes to the manner in which the pipeline was maintained, rather than whether the operation of the pipeline itself was an abnormally dangerous activity. Plaintiffs' allegations in this regard arise under their other theories of liability and cannot overcome the *Fletcher* holding that operation of a petroleum pipeline is not an abnormally dangerous activity as a mater of law. ARCO's motion to dismiss Count IV will therefore be granted.

**Count V-Declaratory and Injunctive Relief**

In Count V, Plaintiffs attempt to state a claim for declaratory and injunctive relief against all Defendants. Plaintiffs' only allegation in this count is that the Class certification of claims is appropriate, making both declaratory and injunctive relief appropriate. Plaintiffs do not set forth any allegations of any claim for which they

claim they are entitled to declaratory and/or injunctive relief in Count V, rather, Plaintiffs merely seek the remedies of declaratory and injunctive relief.

Plaintiffs argue in their Response that they have stated a claim for injunctive relief, citing Rule 23(b)(2), which allows for injunctions to stop behavior that harms a class of people or demand affirmative action to fix a problem. Injunctive relief, however, is a remedy, not an independent cause of action. *Plan Pros, Inc. v. Zych*, No. 2009 WL 928867at *2 (D. Neb. Mar. 31, 2009) (dismissing injunction claim against defendants because "no independent cause of action for injunction exists"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (dismissing claim for injunction because it was "merely" a remedy, not a separate cause of action); *Fletcher*, 129 F. Supp. 2d at 1264. ("The Court agrees that there is no 'injunctive' cause of action under Missouri or federal law. Instead, Plaintiffs must allege some wrongful conduct on the part of Defendant for which their requested injunction is an appropriate remedy."). Plaintiffs may seek injunctive relief as part of their prayer for relief in another claim, but this remedy cannot stand as separate causes of action. *Secure Energy v. Coal Synthetics, LLC*, 2010 WL 1691184 (E.D. Mo April 27, 2010). Count V will therefore be dismissed.

**Count VI-Breach of Contract**

Count VI is clearly brought only against Wiltel, as such, the motion to dismiss

Count VI as to Magellan and ARCO will be allowed. Wiltel argues dismissal because Plaintiffs failed to attach the contract upon which this claim is based. Plaintiff has moved to amend to include the contract. The motion will be granted.

## Conclusion

Based upon the foregoing, the Motions of Wiltel and Magellan to Dismiss are granted in part and denied in part. Count I is dismissed as to Wiltel and Magellan; Count IV is dismissed as to all defendants; Count V is dismissed as to all defendants, Count VI is dismissed as to all defendants, Plaintiffs are given leave to file an amended Count VI as to Defendant Wiltel. Plaintiffs' demand for medical monitoring is stricken. The Motions to Dismiss Counts II and III as to Defendants Wiltel and Magellan are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wiltel Communications, L.L.C.'s Motion to Dismiss, [Doc. No. 4], is granted in part and denied in part;

**IT IS FURTHER ORDERED** that Defendant Magellan Pipeline Company, L.P.'s Motion to Dismiss, [Doc. No. 15], is granted in part and denied in part;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to file an Amended Complaint, [Doc. No. 19], is granted as to Count VI;

**IT IS FURTHER ORDERED** that Defendant ARCO Midcon, L.L.C's Motion to Dismiss and Strike, [Doc. No. 28], is granted.

**IT IS FURTHER ORDERED** that Count I is dismissed as to Wiltel and Magellan;

**IT IS FURTHER ORDERED** that Count IV is dismissed as to all defendants;

**IT IS FURTHER ORDERED** that Count V is dismissed as to all defendants,

**IT IS FURTHER ORDERED** that Count VI is dismissed as to all defendants.

**IT IS FURTHER ORDERED** that Plaintiffs are given 14 days from the date of this Opinion to file an Amended Count VI as to Defendant Wiltel.

**IT IS FURTHER ORDERED** that Plaintiffs' demand for medical monitoring is stricken.

Dated this 2nd day of November, 2010.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT

JUDGE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

GLENN A. HENKE and LINDA KLUNER,)
INDIVIDUALLY and on behalf of all )
others similarly situated           )
                               )
          Plaintiffs,       )
                               )
v.                               )    Case No. 4:10CV86 HEA
                               )
ARCO MIDCON, L.L.C., MAGELLAN   )
PIPELINE COMPANY, L.P., and WILTEL )
COMMUNICATIONS, L.L.C.        )
                               )
          Defendants.     )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Wilted Communications,

L.L.C.'s Motion to Dismiss, [Doc. No. 4]; Defendant Magellan Pipeline Company,

L.P.'s Motion to Dismiss, [Doc. No. 15]; Plaintiffs' Motion for Leave to file an

Amended Complaint, [Doc. No. 19]; and Defendant ARCO Midcon, L.L.C's

Motion to Dismiss and Strike, [Doc. No. 28]. For the reasons set forth below,

Wiltel and Magellan's Motions to Dismiss are granted in part and denied in part.

ARCO Midcon's motion to dismiss and to strike is granted.

## Facts and Background

Plaintiffs bring this putative class action seeking recovery for alleged damage

to Plaintiffs' property and the property of the putative class incurred allegedly as a result of Defendants' ownership, maintenance and control of a pipeline and pipeline easement on or beside the properties. Plaintiffs' Complaint alleges the following[1]:

Plaintiffs own real property that is located at Saale Road and Route 94 in West Alton, Missouri. At all times during Plaintiffs' ownership of the property, it has been subject to or adjacent to an easement containing an underground pipeline.

The underground pipeline running through the easement and alongside Plaintiffs' property was used to transport petroleum products from the early 1900s until the early-1990s. The pipeline is currently used for telecommunications.

The pipeline is approximately 8 inches in diameter and is made of cast iron. Allegedly, the pipeline has deteriorated significantly over time so that now, and during many decades of its use, it was unfit for transport of petroleum products. The pipeline resulted in substantial leaks. The Complaint further alleges that hazardous chemicals were leaked onto Plaintiffs' property and have remained on the property to this day. According to the Complaint, the chemicals continue to migrate onto Plaintiffs' property from the easement. All of the leakage and presence of oil

---

[1] This recitation of facts is set forth for the purposes of these Motion and in no way relieves the parties of the proof thereof in later proceedings. Several of Plaintiffs' allegations are made on "information and belief." For the purposes of this Opinion, the Court will omit the use of this terminology.

products and other toxic substances was hidden from view of the Plaintiffs.

Oil products and other toxic substances, including benzene, leaked or migrated form the pipeline or from the easement onto or under the property, where they remain thereby contaminating the property of the Plaintiffs and the respective properties of the putative class members.

Sinclair Refining Company, Sinclair Pipeline Company, Sinclair Oil Corporation and/or any predecessor, affiliate, parent company, subsidiary company or successor in interest of Sinclair Oil Corporation owned and operated the pipeline and easement beginning in 1950. In 1950, the pipeline and easement were conveyed from Sinclair Refining Company to Sinclair Pipeline Company, which, in 1969 changed its name to ARCO Pipeline Company.

ARCO Midcom L.L.C., is responsible for liabilities and claims against ARCO Pipeline Company. ARCO Midcom now controls assets that were previously owned, controlled and operated by the Sinclair entities and ARCO Pipeline Company.

In 1994, ARCO Pipeline Company sold the pipeline and easement to Williams Pipeline Company. In 2001, Williams Pipeline Company changed its name to Magellan Pipeline Company, L.P.

During the late 1990s, Williams Communication, Inc., a subsidiary of

Williams Pipeline Company, acquired and operated the easement and then-pipeline for fiber optic cables.

Wiltel Communications, LLC is the current owner of the pipeline and easement. Wiltel was formerly known as Williams Communications, Inc. Allegedly, Wiltel Communications, LLC. is responsible for liabilities and claims against Williams Communications, Inc. Wiltel currently controls assets relevant to the claims set forth in the Complaint that were previously owned, controlled and operated by Williams Communications, Inc.

Plaintiffs allege that Defendants Magellan, Wiltel and ARCO Midcon (on behalf of themselves and by their predecessors for which they are liable) owed Plaintiffs the duty to stop pollution leaks or migrations from the pipeline, or from the easement onto or into the property, to inspect and search for leaks and contaminants (past and present) from the pipeline, to clean up the leaks and contaminants, to utilize modern methods such as intelligent pigs to find past repairs on the pipeline which would identify past leaks, to keep and retain records of leaks, to repair leaks, and clean up contaminants, pollutants, and poisons, which originated in the pipeline or the easement, and to warn Plaintiffs of nearby pollutants or hazardous leaks or contaminations which originated from the pipeline or easement, and which Plaintiffs contend persist and continue migrating.

Plaintiffs further allege that Defendants owe an ongoing duty to clean up any spill or leaks, and the remnants of the spills and leaks and that Defendants owed and owe Plaintiffs an ongoing duty to check for spills and leaks.

The Complaint alleges that none of the Defendants has engaged in a reasonable clean-up of any of the spills and leaks and that Defendants continue to breach their ongoing duty to clean up the spills and leaks on the property.

Plaintiffs allege that the leakage, spillage and migration constitute hidden dangers known by Defendants but not known or appreciated by the landowners.

Prior to the sale of the pipeline and easement to Williams Pipeline Company in 1994, employees of Williams and ARCO reviewed past leak records for the pipeline. They compiled a list of hundreds of past leaks in Missouri. The list was attached to the Pipeline Sale and Purchase Agreement. Williams and ARCO agreed that Williams would not and could not test the soil or water for past leaks before the closing of the transaction. There were no records showing or evidencing that any of the listed leaks had been remediated or cleaned up.

Although there are records of additional leaks not contained in the exhibit to the Pipeline Sale and Purchase Agreement, there are no records of any clean ups of these leaks.

Plaintiffs allege that as a result of the actions and omissions of Defendants,

they have proximately caused damages and injuries to Plaintiffs by improperly operating or maintaining the pipeline and easement, which led to the contamination of Plaintiffs' property.

Plaintiffs allege that the Missouri Department of Natural Resources, (MDNR), advised residents of an adjacent property to Plaintiffs that their drinking water well and portions of their land were heavily contaminated with several dangerous petroleum compounds, including benzene. Soil sampling conducted by the MDNR identified a leak in the pipeline to be the source of the contamination. Additionally, readings from a test well on Plaintiffs' property show benzene concentration levels that are higher than the acceptable standards as set by the Environmental Agency.

Count I of Plaintiffs' Complaint is brought under a theory of nuisance against all Defendants; Count II is brought against all Defendants for trespass; Count III, against all Defendants is brought for Defendants' alleged negligence; Count IV alleges Defendants engaged in an abnormally dangerous activity; Count V is styled "Declaratory and Injunctive Relief," but contains no additional allegations other than incorporating the previous allegations and stating that Class certification of the claims is proper. Count VI is brought against Wiltel for breach of contract.

Plaintiffs seek compensatory, consequential and incidental damages,

injucctive relief and punitive damages.[2]

Defendants Wiltel and Magellan move to dismiss the Complaint in its entirety. Defendant ARCO moves to dismiss Counts IV, V and VI and to strike certain other allegations of Plaintiffs' Complaint.

## Discussion

When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) and then *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated by *Twombly*, supra); see also *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009). While detailed factual allegations are not necessary, a complaint

---

[2] Plaintiffs' Complaint seeks medical monitoring for Plaintiffs, however, they have agreed to no longer seek medical monitoring.

that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. *Twombly*, 550 U.S. at 555; accord *Iqbal*, 129 S.Ct. at 1949. The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1949; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If the claims are only conceivable, not plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1950. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See *Nusku v. Williams*, 490 U.S. 319, 327 (1989).

**Count I-Nuisance**

Defendants Wiltel and Magellan have filed virtually identical motions to dismiss Count I. The Court, therefore, will address the motions together.

"Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his [or her] property. The focus is defendant's unreasonable interference with the use of and enjoyment of [another's] land." *Byrom v. Little Blue Valley Sewer Dist.,* 16 S.W.3d 573, 576 (Mo. banc 2000); *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 880 (Mo.banc 1985).

> Essential elements that are required for recovery on the basis of nuisance are injury, damage, and causation. *See Fuchs v. Curran Carbonizing & Engineering Co.,* 279 S.W.2d 211, 217 (Mo.App.1955). The causation element of a nuisance claim is proven when it is shown that the use of the offending property was done in a manner that caused injury to the property of the one claiming damages. *Fletcher v. City of Independence,* 708 S.W.2d 158, 177 (Mo.App.1986).

*Basham v. City of Cuba,* 257 S.W.3d 650, 653 (Mo.App. 2008).

Defendants Wiltel and Magellan argue that the Complaint fails to state a cause of action for nuisance because the facts alleged negate the causation element of a nuisance claim. Neither Defendant owned the property at the time the pipeline was operated for the transportation of petroleum products and therefore, the spill and leaks could not have been caused by either of these two defendants.

Plaintiffs respond by arguing that their claims are not limited to the spills and leaks, but are also based on the continued migration and spreading of the oil

- 9 -

products onto their property.  Plaintiffs rely on *Cook v. DeSoto Fuels, Inc.*, 169

S.W.3d 94, 104-05 (Mo.App. 2005).[3]  This reliance, however, fails to recognize that

in *Cook*, the defendant was the party responsible for originally *causing* the

contamination of the property, and thus, the continuing contamination.

Nowhere in the Complaint do Plaintiffs allege any acts taken by Wiltel and/or

Magellan which caused alleged damage, *i.e*, the leaks and spills of the contaminants

and the continued migration thereof.  The allegations of the Complaint establish that

at no time during these Defendants' alleged ownership of the pipeline were any

petroleum products transported.  "It is essential to liability in either a public or

private nuisance case that the defendant's acts have set in motion a force or chain of

events resulting in the invasion. RESTATEMENT (SECOND) OF TORTS. . .

Section 824, cmt. b."  *City of St. Louis v. Varahi, Inc.,* 39 S.W.3d 531, 537

(Mo.App. E.D.,2001).  As such, Plaintiffs fail to state a claim for nuisance against

these Defendants.   Count I as to Defendants Wiltel and Magellan will be dismissed.

**Count II-Trespass**

Defendants Wiltel and Magellan's motions to dismiss Count II are again

---

[3] Plaintiffs also rely on *Scarlett & Assoc. V. Briar cliff Ctr. Partners*, 2009 WL 3151089 (N.D. Ga. 2009).  The conclusions reached in  *Scarlett*, however, are based on Federal and Georgia state law, and are therefore inapplicable to the Court's analysis of the issues under Missouri law.

essentially identical.  The Court will again address the motions together.  The parties agree that trespass involves interference with the plaintiffs' possessory rights and requires an intentional act that results in a physical invasion of plaintiffs' property.  *Cook*, 169 S.W.3d at 102.  Defendants again argue that Plaintiffs have failed to state a cause of action since the allegations of the Complaint establish that no petroleum products were transported in the pipeline during their ownership, therefore, these Defendants could not have taken any intentional acts to cause Plaintiffs' alleged injuries.

> A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor's predecessor in legal interest therein has tortiously placed there, if the actor, having acquired his legal interest in the thing with knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing.

RESTATEMENT (SECOND) TORTS  § 161.

Plaintiffs have alleged that these defendants had knowledge of the spills and leaks and the continued migration of the contaminants and have failed to take any action to remove them from Plaintiffs' property.  Under the Restatement, Plaintiffs have, for the purposes of the motions to dismiss, plausibly alleged a cause of action against Defendants Wiltel and Magellan for trespass.

**Count III-Negligence**

The parties agree as to the elements necessary to establish a negligence claim.

Plaintiffs must establish that Defendants had a duty to protect Plaintiffs from injury, that Defendants failed to perform that duty and that Defendants' failure proximately cause injury to Plaintiffs. *Lopez v. Three Rivers Electic Coop., Inc*, 26 S.W.3d 151, 155 (Mo. banc 2000).

While Defendants again argue that they could not possibly have caused the injury to Plaintiffs since the spills and leaks occurred prior to their ownership of the pipeline, Plaintiffs have alleged these Defendants had a duty to stop migration of hazardous chemicals from the easement, and the failure to do so caused injury to Plaintiffs. Plaintiffs further allege these Defendants knew of the spills and leaks at the time they acquired the pipeline. Taken together, Plaintiffs' allegations sufficiently set forth a claim such that Plaintiffs' should be allowed to present evidence which would establish the existence of the duty owed by these Defendants and that Defendants' breach of that duty was the proximate cause of Plaintiffs' alleged injuries.

**Count IV-Abnormally Dangerous Activity-Strict Liability**

Plaintiffs concede that Count IV should be dismissed as to Wiltel and Magellan.

With respect to Defendant ARCO Midcon, the Complaint fails to state a

claim.  The doctrine of strict liability applies in narrow circumstances.  "[A] person is strictly liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings."  *Clay v. Missouri Highway and Transp. Com'n*, 951 S.W.2d 617, 623 (Mo.App. 1997)(citations omitted).

In *Fletcher v. Conoco Pipe Line Co*, 129 F.Supp.2d 1255, (W.D. Mo. 2001), the Court determined that the operation of a petroleum pipeline does not constitute abnormally dangerous activity.  The *Fletcher* Court noted that Missouri courts appear to have adopted the Restatement's definition of strict liability, *i.e.*, that the Missouri courts assess a list of factors to determine whether an activity is abnormally dangerous.  *Id*, at 1260.  Those factors to consider are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520. Courts should consider these factors "as a whole and the weight apportioned to each should be dependent upon the facts in each particular case." Restatement (Second) of Torts § 520.

*Id.* Applying these Restatement factors, the *Fletcher* Court determined that operation of a petroleum pipeline is not, as a matter of law, an abnormally dangerous activity. *Id.*, at 1261.

Plaintiffs argue that this case involves a question of general versus specific, therefore seeking to avoid *Fletcher*. As ARCO Midcon correctly argues, Plaintiffs' argument goes to the manner in which the pipeline was maintained, rather than whether the operation of the pipeline itself was an abnormally dangerous activity. Plaintiffs' allegations in this regard arise under their other theories of liability and cannot overcome the *Fletcher* holding that operation of a petroleum pipeline is not an abnormally dangerous activity as a mater of law. ARCO's motion to dismiss Count IV will therefore be granted.

**Count V-Declaratory and Injunctive Relief**

In Count V, Plaintiffs attempt to state a claim for declaratory and injunctive relief against all Defendants. Plaintiffs' only allegation in this count is that the Class certification of claims is appropriate, making both declaratory and injunctive relief appropriate. Plaintiffs do not set forth any allegations of any claim for which they

claim they are entitled to declaratory and/or injunctive relief in Count V, rather,

Plaintiffs merely seek the remedies of declaratory and injunctive relief.

Plaintiffs argue in their Response that they have stated a claim for injunctive relief,

citing Rule 23(b)(2), which allows for injunctions to stop behavior that harms a

class of people or demand affirmative action to fix a problem.  Injunctive relief,

however,  is a remedy, not an independent cause of action.  *Plan Pros, Inc. v. Zych*,

No. 2009 WL 928867at *2 (D. Neb. Mar. 31, 2009) (dismissing injunction claim

against defendants because "no independent cause of action for injunction exists");

*Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008)

(dismissing claim for injunction because it was "merely" a remedy, not a separate

cause of action); *Fletcher*, 129 F. Supp. 2d at 1264.  ("The Court agrees that there

is no 'injunctive' cause of action under Missouri or federal law. Instead, Plaintiffs

must allege some wrongful conduct on the part of Defendant for which their

requested injunction is an appropriate remedy."). Plaintiffs may seek injunctive

relief as part of their prayer for relief in another claim, but this remedy cannot stand

as separate causes of action.  *Secure Energy v. Coal Synthetics, LLC*, 2010 WL

1691184 (E.D. Mo April 27, 2010). Count V will therefore be dismissed.

**Count VI-Breach of Contract**

Count VI is clearly brought only against Wiltel, as such, the motion to dismiss

Count VI as to Magellan and ARCO will be allowed. Wiltel argues dismissal because Plaintiffs failed to attach the contract upon which this claim is based. Plaintiff has moved to amend to include the contract. The motion will be granted.

## Conclusion

Based upon the foregoing, the Motions of Wiltel and Magellan to Dismiss are granted in part and denied in part. Count I is dismissed as to Wiltel and Magellan; Count IV is dismissed as to all defendants; Count V is dismissed as to all defendants, Count VI is dismissed as to all defendants, Plaintiffs are given leave to file an amended Count VI as to Defendant Wiltel. Plaintiffs' demand for medical monitoring is stricken. The Motions to Dismiss Counts II and III as to Defendants Wiltel and Magellan are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wiltel Communications, L.L.C.'s Motion to Dismiss, [Doc. No. 4], is granted in part and denied in part;

**IT IS FURTHER ORDERED** that Defendant Magellan Pipeline Company, L.P.'s Motion to Dismiss, [Doc. No. 15], is granted in part and denied in part;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to file an Amended Complaint, [Doc. No. 19], is granted as to Count VI;

**IT IS FURTHER ORDERED** that Defendant ARCO Midcon, L.L.C's Motion to Dismiss and Strike, [Doc. No. 28], is granted.

**IT IS FURTHER ORDERED** that Count I is dismissed as to Wiltel and Magellan;

**IT IS FURTHER ORDERED** that Count IV is dismissed as to all defendants;

**IT IS FURTHER ORDERED** that Count V is dismissed as to all defendants,

**IT IS FURTHER ORDERED** that Count VI is dismissed as to all defendants.

**IT IS FURTHER ORDERED** that Plaintiffs are given 14 days from the date of this Opinion to file an Amended Count VI as to Defendant Wiltel.

**IT IS FURTHER ORDERED** that Plaintiffs' demand for medical monitoring is stricken.

Dated this 2nd day of November, 2010.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE