**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

GLENN A. HENKE, et al.

          Plaintiffs,

v.

ARCO MIDCON, L.L.C., et al.

          Defendants.

Cause No.:  4:10-cv-00086-HEA

## PLAINTIFFS' MOTIONS IN LIMINE

COME NOW Plaintiffs Glenn Henke and Linda Kluner, by and through their attorneys of record, and move this Court for an order instructing Defendant and its attorneys:

A.      Not to mention, refer to, suggest, or bring before the jury, directly or indirectly, upon voir dire examination, reading of the pleadings, statement of the case, interrogation of witnesses, argument, objections before the jury, documents used at trial, or in any other manner, any of the *in limine* matters set forth below, unless and until such matters have first been called to the court's attention, out of the presence and hearing of the jury, and until a favorable ruling has been received regarding the admissibility and relevance of such matters.

B.      To inform all witnesses called by Defendant not to mention in the presence or hearing of the jury any of the below-enumerated *in limine* matters, unless and until specifically permitted to do so by ruling of the court.

C.      If testimony to be presented to the jury has been taken before ruling on this motion and concerns matters subject to this motion, including without limitation oral statements, documents used in the testimony or statements of counsel, such matters should be stricken before presentation to the jury.

## IN LIMINE MATTERS

This motion is made as to the following evidence, argument, or conduct before the jury:

1.      Any testimony, discussion, statement, argument, or innuendo or any other reference to the fact that this action was originally filed as a class action lawsuit or that the Court denied class certification to the proposed class.  Since the Court denied certification of the class, the procedural posture of this case prior to denial of class certification is wholly irrelevant at trial.  This information would only be offered to prejudice the jury against Plaintiffs.  The only matters pending at trial relate to Plaintiffs' individual claims and the liability of Defendant for the claimed damages.

Thus, this Court should prohibit all evidence or mention of class action, class certification, denial of class certification or any other suggestion that Plaintiffs were unsuccessful as class representatives.


_____ Sustained  _____ Overruled  _____ Under Advisement


2.      Any evidence or argument that Defendant ARCO Midcon, L.L.C. is not the responsible party to answer for the alleged liabilities and damages in this matter, or that Defendant is not responsible for the conduct of ARCO Pipe Line Company and Sinclair Pipeline Company with respect to the pipeline at issue in this litigation.  Plaintiffs asked Defendant to admit that "ARCO Midcon, LLC ("ARCO Midcon") is a successor to APL [ARCO Pipe Line Company]" in their Statement of Material Facts in Support of Their Response to Defendant's Motion for Summary Judgment.  *See* Doc. #: 175, ¶ 14.  Defendant responded as follows:

> Undisputed that ARCO Midcon is a "successor" to certain contractual assets and liabilities which had belonged to APL, when in 2000 Atlantic Richfield

transferred certain joint venture interests and contract rights to ARCO Midcon as part of its larger divestiture of APL to TEPPCO. (See Def. Ex. S at 16-17, 61.) Disputed that ARCO Midcon is the legal "successor-in-interest" to APL or that ARCO Midcon ever owned or operated the subject pipeline, which had been sold by APL in 1994 to Williams. (Def. Ex. S at 84-85.)

*See* Doc. #: 184, ¶ 14.

Between 1950 and 1994, the only timeframe that any refined petroleum products were run through the subject pipeline, a company named Sinclair Pipe Line Company, who later changed their name to ARCO Pipe Line Company, operated the subject pipeline.  Doc. # 184, ¶¶ 4, 5, 6, 7; **Exhibit 5**, *Depo. of Dennis Dooley*, pgs. 60-64, 82-84.  Sinclair Pipe Line Company owned and operated the pipeline from 1950 to 1969.  *Id*.  In 1969, Sinclair simply changed their name to ARCO Pipe Line Company.  *Id*.  This was a name change only and no corporate assets or liabilities were divested or transferred.  *Id*.  at ¶ 5.  Thus, ARCO Pipe Line is the legal "successor in interest" to Sinclair Pipe Line Company.  *Id*.; *see W.T. Rawleigh Co. v. Grigg*, 191 S.W. 1019 (Mo. Ct. App. 1917)(holding that change of corporate name does not change the corporation, but only gives the corporation a new name).

In 2000, ARCO Pipe Line Company was divested in connection with BP's acquisition of Atlantic Richfield Company.  **Exhibit 1**, *Depo. of Vilia Drazdys*, p. 16.  ARCO Midcon, LLC is a subsidiary company of BP America, Inc. that was created as part of the acquisition to receive certain assets and liabilities of ARCO Pipe Line Company.  **Ex. 1**, pgs. 133-34, 161.  In related litigation arising out of petroleum contamination on property adjacent to the current Plaintiffs' property, ARCO Midcon stated that "ARCO Midcon is a successor-in-interest to APL (ARCO Pipeline Company)."  **Exhibit 2**, *Def. ARCO Midcon, LLC's Answers to Pltfs' Second Set of Interrog.*, *Green v. Wiltel Communications LLC, et al.*, p. 4, Interrog. No. 5.

When asked in Plaintiffs' First Set of Interrogatories in this matter to "[i]dentify the entity which is presently responsible for any potential liability of ARCO Pipeline Company

arising out of the subject Pipeline," Defendant ARCO Midcon stated that "it has been properly named as a defendant."  **Exhibit 3**, *Def. ARCO Midcon, LLC's Answers to Pltf's First Interrog.*, p. 4, Interrog. No. 4.  Defendant's corporate representative was then questioned extensively on this topic at her deposition, and she gave the following testimony:

> Q:   Okay. Did ARCO Midcon take on the liabilities associated with the pipeline segment we've been discussing?
>
> [objection]
>
> A:   Again, to the extent that it's not a legal conclusion, but yes, there were certain liabilities associated with this pipeline segment that is at issue in this litigation and certain claims that ARCO Midcon has response – has taken responsibility for, yes.
>
> Q:   Okay. Has ARCO Midcon taken responsibility for the claims in this case?
>
> A:   Well, ARCO Midcon is the correct defendant in this case, yes.
>       …
>
> Q.   Okay.  And that's what I was looking for. There's not another Arco company, another Arco Pipeline affiliate, another Arco Pipeline successor of some kind that you think has the responsibility for any potential liability?
>
> A.   That's correct.  Arco Midcon is the correct entity.
>       …
>
> Q:   Okay. And it accepts – although with the full right to contest liability and class certification accepts responsibility for that judgment?
>       I mean, there's not some other party that ARCO is going to say should have to pay that judgment?
>
> A:   As to the plaintiffs, that is correct, that as to the plaintiffs – and if there is a judgment that the plaintiffs obtain that ARCO Midcon will not make plaintiffs chase another entity.

**Ex. 1**, pgs. 17-19, 148.

4

When asked by Plaintiffs' counsel whether there were any documents which specifically discussed which liabilities of APL were transferred to ARCO Midcon, counsel for ARCO Midcon asserted the following objection:

> "MS. SIROTT:  I'm actually going to object to that, because for purposes of this litigation, all you need to know is that Arco Midcon has represented they are the proper defendant in this case.  Beyond those liabilities, you have no interest in them."

**Ex. 1**, p. 147.

Based on Defendant's response to the motion for summary judgment facts and the corporate representative's deposition testimony, Plaintiffs move to exclude any contention that Defendant is not the proper entity to be found liable for any and all negligence or trespass by ARCO Pipe Line Company and Sinclair Pipeline Company, or that it is not responsible or "at fault" for the damages caused by the conduct of ARCO Pipe Line Company and Sinclair Pipeline Company.

This motion encompasses exclusion of any argument that ARCO Midcon never "owned and operated" the pipeline at issue to suggest that it should not be liable based on this fact.  Any such argument would clearly be an attempt to mislead and confuse the jury by suggesting that ARCO Midcon is not responsible because the negligent conduct was not the conduct of ARCO Midcon, but that of ARCO Pipeline Company and/or Sinclair Pipeline Company.  Since ARCO Midcon is the proper entity responsible for the negligence on behalf of ARCO Pipeline Company and/or Sinclair Pipeline Company, this argument would be unfair and misleading.  Defendant is free to dispute negligence or the elements of trespass, but not for the reasons that they are not the proper party from which to seek damages.

As a result, this Court should exclude all evidence and argument that ARCO Midcon is not the proper party responsible for its conduct and the conduct of ARCO Pipeline Company for purposes of this litigation.

_____ Sustained   _____ Overruled   _____ Under Advisement

3.      Any and all evidence, argument, presentation, testimony or reference that Plaintiffs previously had claims against prior Defendants that have already been dismissed from this case, including captions of pleadings naming previously dismissed Defendants, or references to alternate theories of liability alleged against those prior Defendants.  This evidence is irrelevant to any issue in this matter, and its introduction would be highly prejudicial and could mislead and confuse the jury.

Wiltel Communications, LLC and Magellan Pipeline Company, LP were previously parties to this lawsuit that have been subsequently dismissed after settlement with Plaintiffs.  It is highly improper for defense counsel to point to an "empty chair" and suggest to the jury that Plaintiffs are targeting Defendant ARCO Midcon and showing favor to others who might be charged with fault, especially when the other parties referred to have previously been parties to the lawsuit.  *Heisler v. Jetco Service*, 849 S.W.2d 91, 94 (Mo.App. E.D. 1993).

Not only would the jury's consideration of these issues be an improper failure to follow the law, but given the fact that Wiltel Communications, LLC and Magellan Pipeline Company, LP were parties to this lawsuit and previously dismissed, the jury will be misled.  As a result, the exclusion of such evidence is necessary in order to avoid any unfair prejudice to Plaintiffs.

_____ Sustained   _____ Overruled   _____ Under Advisement

4.      Plaintiffs move to prevent Defendant from introducing any evidence on subjects for which Defendant's corporate representative claimed ignorance or lack of knowledge at her deposition.  Defendant's corporate representative, Ms. Vilia Drazdys, testified that Defendant did not have any information or documentation on a large number of topics for which she was designated to testify.

Plaintiffs' notice of deposition pursuant to Rule 30(b)(6), attached hereto as Exhibit 4, identifies various topics on which Plaintiffs asked for testimony and/or documents (the "Notice").  **Exhibit 4**, *Notice of Corp. Rep. Depo. to ARCO Midcon, LLC.*   Many of these topics are key to the facts at issue in this case, including information regarding the various leaks of the pipeline segment, whether previously identified leaks were cleaned up, whether any leaks on Plaintiffs' property were previously identified or remediated, and the identity of any entity or individual who possesses documents on these topics.

Ms. Drazdys made continuous statements throughout the deposition that Defendant ARCO Midcon did not have a majority of the information requested in the Notice because it had never owned or operated the pipeline segment at issue, although Defendant is accepting liability for the claims in this case.  In effect, Defendant accepts liability for ARCO Pipe Line Company's conduct in relation to Plaintiffs' claims but contends that it has none of the information that may prove Plaintiffs' claims. The specific topics that ARCO Midcon claimed it had no knowledge on, and that Plaintiffs are thereby seeking to prevent Defendant from presenting evidence on, include:

7

A.  Knowledge of whether any documents, other than those already produced in this litigation, evidence or demonstrate clean-up or remediation of any historical leaks in regard to the subject pipeline (**Ex. 1**, pgs. 58-60);

B.  Knowledge of whether contamination still exists on properties for which there are identified historical leaks, or whether appropriate clean-up or remediation were conducted on those properties (**Ex. 1**, pgs. 58-60);

C.  Knowledge of any other documents relevant to proving or disproving Plaintiffs' claims in the possession of ARCO Midcon or accessible to ARCO Midcon (**Ex. 1**, pgs. 14-15);

D.  Knowledge of whether any documents, no longer in existence, would have demonstrated clean-up or remediation of historical leaks (**Ex. 1**, pgs. 66-67);

E.  Knowledge of the source of information or method of creation of Exhibit 10.4 to the PSA document wherein the pipeline was sold in 1994 (**Ex. 1**, p. 151).

It would constitute unfair surprise and obstruction if Defendant was to appear at trial and have answers to the topics on which it previously claimed it had no knowledge.  In a corporate representative deposition pursuant to F.R.C.P. 30(b)(6), a corporation is bound by the testimony of its designated witness.  *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 2013 WL 3946116, at *1 (E.D. Mo. July 31, 2013).   In choosing a deponent to speak on behalf of the defendant corporation, companies have a duty to make a good-faith effort to designate knowledgeable persons and to prepare them to fully and unevasively answer questions on the designated subjects.  *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006). Because Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf as to *all matters reasonably available to it,* the Rule requires persons to review all matters known or reasonably available to the corporation in preparation for the deposition."  *Id.* at 527-528.  If need be, the responding party must prepare the deponent by having them review prior witness depositions as well as documents and deposition exhibits.  *Id.* at 528.  "Any other interpretation of the Rule would allow the responding corporation to 'sandbag' the deposition process."  *Id.*

8

Several courts have directly addressed the problem at hand and precluded a corporate defendant from introducing evidence on subjects that its corporate representative disclaimed any knowledge of during a deposition. *See Function Media, L.L.C. v. Google, Inc.*, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010)("When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject."); *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007)("Federal courts have interpreted this rule as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject."); *Ierardi v. Lorillard, Inc.,* 1991 WL 158911, at *3 (E.D.Pa. Aug.13, 1991)("Under Rule 30(b)(6), [the organization] has an obligation to prepare its designee to be able to give binding answers on behalf of [the organization]. If the designee testifies that [the organization] does not know the answer to [deposing attorney]'s questions, [the organization] will not be allowed to effectively change its answer by introducing evidence during trial. The very purpose of discovery is to avoid trial by ambush.").

Here, since Ms. Drazdys testified on multiple occasions that she did not have knowledge regarding the specific topics requested by Plaintiffs, it would be unfair to allow Defendant to introduce evidence on the topics at trial.  As a result, this Court should preclude the introduction of any evidence by Defendant on subjects for which Defendant's corporate representative claimed ignorance or lack of knowledge at her deposition.


_____ Sustained   _____ Overruled   _____ Under Advisement

9

5.    Any evidence, questioning, testimony, discussion, statement, or argument regarding opinions of Plaintiffs' expert Jeffrey Langston with respect to the source of the contamination on Plaintiffs' property.

Mr. Langston was retained to conduct a subsurface investigation on Plaintiffs' property, and disclosed by Plaintiffs as an expert for the limited purpose of describing the methods used and the results obtained in the subsurface testing.  **Exhibit 6**, *Pltf's Rule 26(a)(2) Disclosure of Expert Witnesses dated 6/14/14*, p. 2 ("Plaintiffs may call Jeff Langston, RG.  Mr. Langston's testimony will be limited to the methods used and results obtained in subsurface testing on Plaintiffs' property located in West Alton, Missouri in June 2010 and in April 2014; he will be offering no other opinions in this case.")

Mr. Langston was not asked to do an assessment of the potential sources of the contamination Plaintiffs' property.  He testified that he has no opinion to a reasonable degree of scientific certainty about the source of the contamination on the Henke property.  He has no experience in determining the potential sources of contamination in regard to pipelines.  **Exhibit 7**, *Depo. of Jeff Langston dated 7/9/14*, pgs. 43-46. Mr. Langston specifically testified that he would not be able to offer an opinion as to the source of the contamination on the Henke property.  When pressed by defense counsel in his deposition, Mr. Langston stated that he would not have enough information to make a conclusion about the source of the contamination if he were asked to do so "tomorrow." **Ex. 7**, p. 56.

Plaintiffs have retained two other experts to assess and give opinions regarding the source of the contamination on the Plaintiffs' property, Dr. Agostino and Mr. Marcon.  Both are far more qualified based on their education and experience to give such opinions, have reviewed information that Mr. Langston did not have access to, and most importantly, have actually done

the analysis necessary to reach their conclusions.  Asking an unqualified individual whether he would have enough information to conduct a hypothetical analysis that he has not undertaken to perform, in an effort to suggest that Plaintiffs' two other qualified experts lack a basis for their conclusions, is deceptive, unhelpful, irrelevant, confusing, and misleading to the jury.  Defendant can question Dr. Agostino and Mr. Marcon directly regarding the bases for their opinions.

Thus, this Court should prohibit any evidence, questioning, testimony, discussion, statement, or argument regarding opinions of Plaintiffs' expert Jeffrey Langston with respect to the source of the contamination on Plaintiffs' property.

_____ Sustained   _____ Overruled   _____ Under Advisement

6.     Any evidence, testimony, discussion, statement, or argument regarding opinions of Defendant's expert Albert Westover with respect to whether the contamination on Plaintiffs' property needs to be remediated.  Mr. Westover does not qualify as an expert on this issue under Federal Rule of Evidence 702, and his report does not contain any opinions or reasoning for the opinions on the issue.

In his deposition, Mr. Westover attempted on several occasions to give an opinion that the Plaintiffs' property does not need to be remediated.  **Exhibit 8**, *Depo. of Albert Westover*, pgs. 47-49.  Mr. Westover was designated as an expert by Defendant as an appraiser to testify only about the value of the Plaintiffs' property.  **Ex. 8**, pgs. 6-7, 53. There are no opinions in his expert report regarding whether the Plaintiffs' property needs to be cleaned up. **Ex. 8**, pgs. 53-54.

In his deposition, Mr. Westover simply adopted the opinion of Defendant's environmental expert, Eric Page, but was never provided with the reports of Plaintiffs'

11

environmental experts.  **Ex. 8**, pgs. 44-47.  Mr. Westover acknowledges in his deposition that he is not an environmental specialist, and testified that he is not an expert in terms of whether or not remediation needs to take place.  **Ex. 8**, pgs. 47.  He testified that generally the limit of what he was asked to do in this case was give opinions regarding the valuation of Plaintiffs' property with and without contamination, and that the opinions that he is going to give in this case will be limited to those two issues.  **Ex. 8**, pgs. 6-7, 53-54. He admits that he was not asked by the Defendant to investigate or give an opinion on whether the Plaintiffs' property needs to be cleaned up.  **Ex. 8**, pgs. 44-49.  He admits that he did not formulate an opinion on that issue since the attorneys did not ask him to do so.  *Id*.  He did not prepare a report specifying that opinion or the basis for that opinion. **Ex. 8**, pgs. 44-49, 53-54.

Thus, this Court should prohibit any evidence, testimony, discussion, statement, or argument regarding opinions of Defendant's expert Albert Westover with respect to whether the contamination on Plaintiffs' property needs to be remediated.

_____ Sustained   _____ Overruled   _____ Under Advisement

**THE SIMON LAW FIRM, P.C.**


By:   /s/ Timothy M. Cronin
John G. Simon, #35231MO
Timothy M. Cronin, #63384MO
Erica F. Blume, #63716MO
800 Market Street, Suite 1700
St. Louis, MO 63101
314-241-2929
Fax: 314-241-2029
jsimon@simonlawpc.com
tcronin@simonlawpc.com
eblume@simonlawpc.com


and

**SCHULTZ & ASSOCIATES LLP**
Robert Schultz, #35329
640 Cepi Drive, Suite A
St. Louis, Missouri 63005
636-537-4645
Fax:  636-537-2599
rschultz@sl-lawyers.com
*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on 29th of December, 2014, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

  /s/ Timothy M. Cronin