# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

GLENN A. HENKE and LINDA KLUNER )
INDIVIDUALLY AND ON BEHALF OF )
ALL OTHERS SIMILARLY SITUATED, )
                                                            ) Case No. 4:10cv00086 HEA
        Plaintiffs, )
                       )
v. )
                       )
ARCO MIDCON, L.L.C., )
                       )
        Defendant. )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the remaining Defendant ARCO MIDCON, LLC's Motion for Summary Judgment, [Doc. No. 156].[1] Plaintiffs oppose the motion. For the reasons set forth below, the Motion is granted.

## FACTS AND BACKGROUND

Plaintiffs brought this action as a putative class action seeking recovery for alleged damages to property that Plaintiffs claim they incurred as a result of Defendant's ownership, maintenance and control of a pipeline and easement on or beside the properties. On March 12, 2014, the Court denied Plaintiff's Motion for Class Certification.

---

[1] On July 3, 2014, Plaintiffs dismissed Defendants Magellan Pipeline Company, L.P. and WilTel Communications, L.L.C., with prejudice.

Plaintiffs Glenn Henke and Linda Kluner jointly own a single parcel of land located in West Alton, St. Charles County, Missouri. Plaintiffs, who are brother and sister, each have 50 percent ownership interest in the land. The property is located near the intersection of Saale Road and Route 94 in West Alton, Missouri; the single parcel is approximately 76 and 1/3 acres. Plaintiffs do not live on their property. Plaintiffs rent their property solely for use to a tenant farmer, Gary Machens, who pays annual rent to Plaintiffs. Plaintiffs have never rented to any other persons.

There is petroleum contamination identified on approximately one half-acre of Plaintiffs' property in the subsurface soil and groundwater. Soil and groundwater piezometer testing was conducted on the Plaintiffs' property in both July 2010 and April 2014.

There is a former petroleum pipeline that runs along the northern edge of Plaintiffs' property in an east-west direction, adjacent to Saale Road. The former petroleum pipeline segment that crosses Plaintiffs' property was owned until July 1994 by ARCO Pipeline Company.

From 1950 to 1969, the pipeline segment at issue was owned and operated by a company named Sinclair Pipe Line Company. In 1969, Sinclair Pipe Line Company changed its name to ARCO Pipe Line Company. ARCO Pipeline

Company owned and operated the pipeline segment at issue from 1969 to 1994.

Between 1952 and 1990, the pipeline segment at issue was used to transport petroleum products at various times. By December of 1990, the former petroleum pipeline at issue was idled, purged of any petroleum products and packed with nitrogen.

In July 1994, ARCO Pipe Line Company sold the pipeline as well as the real estate, contracts, permits, leases, easements and other rights of way to Williams Pipeline Company pursuant to a "Pipeline Sale and Purchase Agreement" or "PSA."

ARCO Pipe Line Company was dissolved in 2000. As a result of the dissolution of ARCO Pipe Line Company, certain rights and liabilities associated with the pipeline segment at issue, which previously belonged to ARCO Pipe Line Company, were transferred to Defendant ARCO Midcon LLC.

The pipeline is a segment of a former petroleum pipeline owned by a predecessor of Defendant ARCO Midcon, LLC – ARCO Pipeline Company – from 1950 to 1994. The segment runs from Mexico, Missouri to Wood River, Illinois[2]

---

[2] By their Motion to Amend By Interlineation, Plaintiffs have their limited their claim to this segment of the pipeline.

Over several decades, the pipeline was laid, repaired, reconditioned, mothballed, and ultimately converted to a conduit for telecommunications cable. ARCO Pipeline Company operated the pipeline as a petroleum pipeline for decades until 1990, when it began the process of packing and purging it, i.e., mothballing the pipeline, by removing all petroleum products and pressurizing it with nitrogen. After the pipeline was mothballed, a process that was completed by the end of 1990, it was never again used to transport petroleum products. In 1994, ARCO sold the pipeline to Williams Pipe Line Company, n/k/a Defendant Magellan, as part of a larger transaction involving other pipeline segments. Beginning in 1999, the pipeline segment was prepared for and ultimately had fiber optic cable installed in it. In 2001, the pipeline segment was sold to Defendant WilTel, a telecommunications company that currently uses the pipeline to house its fiber optic network. WilTel acquired communication rights from all of the landowners along the segment.

The 1994 "Pipeline Sale and Purchase Agreement Between ARCO Pipe Line Company and Williams Pipe Line Company" ("the PSA,") contained an exhibit titled: "ARCO Pipe Line Company – Products Spills for Assets Being Sold To Williams – APL Retained Environmental Liabilities – Exhibit 10.4." Exhibit 10.4 is a list of remediated leaks for which ARCO agreed to retain liability. It lists

leaks by pipeline segment, including segments which are not part of Plaintiffs' allegations. It was compiled by ARCO's Safety, Health, and Environmental Protection group ("SHEP") and identifies a list of prior leaks known to the seller, ARCO, for which ARCO agreed to remain responsible. Exhibit 10.4 does not indicate specific property locations for the identified leaks. For example, a typical entry under the column "Name of Line, Nearest Town, County," would be "Wood River to Mexico 8", 4 Miles East of Peruque, MO, St. Charles County."

The 1994 PSA between ARCO and Williams and its Exhibit 10.4 lists past leaks that Defendants assert were remediated. ARCO represented and warranted to Williams at the time of sale that it was a complete and accurate list of past leaks that had been remediated. ARCO was aware of all the releases on Exhibit 10.4 and represented in the Pipeline Purchase and Sale Agreement that it had complied with and was operating the old ARCO pipeline within all the necessary laws and regulations. Plaintiffs have not yet identified any duty or regulatory requirement that Defendants keep records of how leaks were addressed and cleaned up, and Defendants maintain that not even current operators are required to do so. Exhibit 10.4 itself is not a leak report – it is a summary list of leaks. Exhibit 10.4 contains several column headings, including: "Report No.," "Leak Date," "Name of Line, Nearest Town, County," "Product," "Leak Cause," "Bbls Out," and "Bbls

Rec." The column heading "Report No." gives the corresponding break and leak report numbers. For additional information, one would need to look at the corresponding break and leak report with that number. Plaintiffs' experts reported that they were shown examples of break and leak reports. Former ARCO employee Mr. Dooley identified six break and leak reports prepared by him. These leak reports contain information more specific than Exhibit 10.4 about where the leak occurred, when, and what was done to repair the leak and clean it up. The information on these six break and leak reports corresponds to six entries on Exhibit 10.4 and can be identified by matching the report number from the left-hand column on Exhibit10.4 to the report number on the upper right corner of the break and leak report.

Other records referenced by Plaintiffs include several separate form documents which in some instances indicate that they are for settlement in full for all damages to the real and personal property of undersigned, or similar language. Other documents state that they are for damages caused by repairing, reconditioning, relaying, and the like.

ARCO (and prior operators) generated leak reports and maintenance reports related to the cleanup of a leak or spill from the pipeline. The "break and leak" reports were an initial report on a leak. Maintenance reports were follow-up

reports reflecting additional activity such as replacing pipeline, repairing pipeline, excavation, removal of petroleum products, etc. Plaintiffs define their proposed classes based on the non-existence of "break and leak" reports for property with a leak or spill record. Plaintiffs exclude those properties for which a "break and leak" report has been produced from their proposed classes. Defendants assert that Exhibit 10.4 shows that these records were generated and did exist, for it was assembled from "break and leak" reports: the column heading "Report No." corresponds to specific break and leak report numbers.

The petroleum industry is a highly regulated industry. The Department of Transportation requires operators of petroleum pipelines to keep ten types of records. As ARCO's expert Mesavage observed, the recordkeeping and document retention requirements set forth in 49 CFR 195 were all promulgated after 1980. Defendant asserts that these document retention requirements do not include any requirement to retain cleanup or remediation records from prior pipeline leaks. Defendant notes all of these requirements are directed to the operator of a pipeline.

Count I of Plaintiffs' Amended Complaint is brought under a theory of nuisance against ARCO only. Count II is brought for trespass; and Count III, for alleged negligence.

## SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56©; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine dispute of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). A dispute of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a

motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

## Nuisance

"Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the rights of another to peacefully enjoy [her] property." *Rosenfeld v. Thoele,* 28 S.W.3d 446, 450 (Mo.App.E.D.2000). "Essential elements that are required for recovery on the basis of nuisance are injury, damage, and causation." *Basham v. City of Cuba,* 257 S.W.3d 650, 653 (Mo.App.S.D.2008). *Bush v. City of Cottleville*,411 S.W.3d 860, 866 (Mo.App. E.D.,2013). " 'Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his

[or her] property.' " *Basham,* 257 S.W.3d at 653 (quoting *Byrom v. Little Blue Valley Sewer Dist.,* 16 S.W.3d 573, 576 (Mo. banc 2000)).

Defendant argues lack of causation and damage. Defendant claims that Plaintiffs can not show causation because there is no evidence that Defendant took any affirmative actions of which Plaintiffs suffered loss to their property. Plaintiffs, however, have not presented evidence to arguably show from where the contamination came. The one claiming damages can prove the causation element of a nuisance claim by showing that the offending property was used in a manner that caused injury to the claimant's property. *Basham,* 257 S.W.3d at 653. Further, the "but for" causation test applies. *Zumalt v. Boone County,* 921 S.W.2d 12, 15 (Mo.App.1996). *Miller v. City of Wentzville* 371 S.W.3d 54, 57 -58 (Mo.App. E.D.,2012). Thus, it can be argued that "but for" the pipeline's use, there would be no contamination.

Plaintiffs' fatal lack of proof, however, is the failure to present evidence of a substantial impairment to the property. Currently, the property is used as farmland and there is no evidence that this use is impaired in any way.

Although Plaintiffs attempt to overcome this barrier to recovery through a newly presented affidavit, the affidavit directly conflicts with previous testimony that Plaintiffs have sustained no actual impairment with the use or possession of

their land.  Plaintiffs' speculation that the property may be diminished in value in the event of a future sale of different use is not sufficient to withstand a summary judgment motion.  A "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

**Trespass**

To establish a claim for trespass, "the pollution must be at a level so as to constitute an actual interference with the possession of the land." *Williams v. Monsanto*, 856 S.W.2d 338 (Mo. App. 1993). Moreover, a claim for trespass encompasses an element of causation, i.e., did any actions of defendant *cause* a trespass?  See *Kinealy v. Southwestern Bell Telephone Company*, 368 S.W.2d 400, 402 (Mo. 1963). "[T]respass involves interference with the plaintiffs' possessory rights and requires an intentional act that results in a physical invasion of the plaintiffs' property." *Cook v. DeSoto Fuels, Inc.*, 169 S.W.3d 94, 102 (Mo. App. E.D. 2005). Here, Plaintiffs allege that contamination from leaks or spills of

petroleum products constitutes the trespass. Yet, the evidence demonstrates that the alleged spills or leaks all occurred prior to ARCO MIDCON's existence; it never used the pipeline to transport petroleum products. No action on its part can be described as an intentional act that resulted in a physical invasion of Plaintiffs' property.

## Negligence

"To make an adequate claim for common law negligence, a plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *Sill v. Burlington N. R.R.,* 87 S.W.3d 386, 391 (Mo.Ct.App.2002)., citing *Lopez v. Three Rivers Electric Coop., Inc.,* 26 S.W.3a 151, 155 (Mo. banc 2000). The Court finds that Plaintiffs have failed to establish the proximate cause and harm elements of their negligence claim. The record is devoid of any evidence to establish that this Defendant owed a duty to these Plaintiffs, that any duty was breached by Defendant, and a resulting harm occurred. The evidence in the record before the court establishes that there is no documentation or record of any spill from this pipeline onto Plaintiffs' property and that the ARCO pipeline was maintained in accordance with industry standards.

While Plaintiffs argue that there may have been a contractual agreement regarding the PSA's indemnification provision, Plaintiffs are not parties to the PSA and as such cannot rely on any contractual indemnification.

Moreover, Plaintiffs have failed to present any actual harm. Plaintiffs speculate that the property has a diminished value in the event they may sell the property in the future. This speculation is insufficient to hold Defendant responsible for damages. There is no current plan to sell the property, nor is there any evidence which would establish a need for remediation. The property is currently used, as it has been in the past, for tenant farming. As such, Plaintiffs have failed to establish the necessary injury element of a negligence claim.

## CONCLUSION

Plaintiffs have failed to overcome Defendant's Motion for Summary Judgment. Based on the entire record, Plaintiffs have failed to present evidence to establish the essential elements of their claims for nuisance, trespass and negligence. Defendant is therefore entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. 156], is granted.

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 5th day of January, 2015

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE